IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NOLVIA IRIS RIVERA RIOS         :

                                 :

   v.                       :   Civil Action No. DKC 23-1140

                                 :

WINNERS AUTO SALE, LLC d/b/a
Winners Auto Sales           :

## MEMORANDUM OPINION

Plaintiff Nolvia Iris Rivera Rios ("Plaintiff") brought this action against Winners Auto Sale, LLC ("Defendant"), alleging that the odometer on a minivan she purchased had been rolled back. A default has been entered against Defendant, (ECF No. 5), and Plaintiff filed a motion for default judgment, (ECF No. 23). Also pending are two motions for extension of time that Defendant filed on the same date. (ECF No. 27; 28). For the following reasons, Defendant's first motion for extension of time will be denied, Defendant's second motion for extension of time will be granted, Plaintiff's motion for entry of default will be granted in part and denied in part, and a hearing will be scheduled in order to determine Plaintiff's entitlement to damages.

## I.  Background

The following facts alleged in the complaint are taken as true. Plaintiff purchased a 2012 Honda Odyssey from Defendant on July 27, 2021. (ECF No. 1 ¶ 22). Defendant represented that the

mileage was 101,389[1] both in writing on the Retail Installment Sales Contract and as shown on the odometer itself. (*Id.* ¶¶ 24-26). Plaintiff received no other written representations regarding the vehicle's odometer reading or mileage. (*Id.* ¶ 28). In August 2022, a mechanic found significant issues with the transmission and engine, and quoted Plaintiff several thousand dollars in repairs. (*Id.* ¶¶ 29-31). Plaintiff reviewed a CARFAX report after consulting with the mechanic which showed that the vehicle was sold at an auction on July 21, 2021, with mileage at 201,263.[2] (*Id.* ¶¶ 32, 33). Plaintiff alleges on information and belief that Defendant was the purchaser at the auction. (*Id.* ¶ 35). Defendant had the vehicle inspected on July 26, 2021, showing mileage at 101,389. (*Id.* ¶ 36). The CARFAX report notes the discrepancy as "POTENTIAL ODOMETER ROLLBACK." (*Id.* ¶ 37). Plaintiff confronted Defendant with that revelation on October 24, 2022, and Defendant acknowledged the excess miles but indicated that it had told her at the time that the vehicle had over 200,000 miles, which was untrue. (*Id.* ¶¶ 39, 40).

---

[1] Plaintiff refers to mileage of 101,389, (ECF No. 1 ¶¶ 3, 36, 52, 58, 66), and 101,839, (*id.* ¶¶ 24, 26). The court assumes the discrepancy is due to typographical error and will use the 101,389 figure.

[2] Plaintiff refers to mileage of 201,263, (ECF No. 1 ¶¶ 7, 52, 58, 66, 69), and 201,623, (*id.* ¶ 33). The court again assumes the discrepancy is due to typological error and will use the 201,263 figure.

Plaintiff filed the complaint on April 28, 2023. (ECF No. 1). She brings claims for violation of the Federal Odometer Act, 49 U.S.C. § 32701 *et seq.* (Counts I and II), the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 *et seq.* (Count III), and common law intentional misrepresentation / fraudulent inducement (Count IV).

Plaintiff then filed proof of service, asserting that her process server served Defendant's registered agent, Gerson N. Arias ("Mr. Arias"), on May 1, 2023. (ECF No. 3). No answer was received from Defendant. On Plaintiff's motion, (ECF No. 4), the clerk entered a default for want of answer against Defendant on May 30, 2023, (ECF No. 5). The clerk's notice of default, (ECF No. 6), was returned as undeliverable on June 26, 2023, (ECF No. 7), and was remailed to Defendant and Mr. Arias on June 28, 2023, (ECF No. 8).

Defendant filed motions to quash service and vacate default on June 28, 2023, arguing that Defendant's "resident agent was never served." (ECF Nos. 9, at 1; 10, at 1). On July 12, 2023, Plaintiff filed a consent motion for extension of time to file a response to Defendant's motions to vacate default and quash service, (ECF No. 12), which the court granted on July 13, 2023, (ECF No. 13). Plaintiff filed a response in opposition to Defendant's motions on July 26, 2023, requesting an evidentiary hearing to "determine whether Winners' resident agent was, in fact,

3

served." (ECF No. 14, at 2). On September 8, 2023, the court held a hearing to address whether Defendant was properly served. (ECF No. 18). Based on the evidence and testimony presented at the hearing, the court denied Defendant's motions to quash service and vacate default. (ECF No. 22).

Plaintiff filed a motion for default judgment on October 6, 2023. (ECF No. 23). She requested that the court enter her Proposed Findings of Fact, and asked the court to set a hearing at which she may present evidence of her damages.[3] (ECF No. 24, at 3).

Defendant filed two motions for extension of time to oppose Plaintiff's motion for default judgment on October 24, 2023. (ECF Nos. 27; 28). The motions are identical except for the extension deadline requested. In the first motion, Defendant requests an extension to October 21, 2023,[4] and in the second, Defendant requests an extension to October 31, 2023. (*Id.*). Defendant,

---

[3] Plaintiff requests that the court make a translator available at the hearing because Plaintiff is a Spanish speaker. (ECF No. 24, at 3 n.1). The court appoints an interpreter only in judicial proceedings instituted by the United States. Guide to Judiciary Policy, Vol. 5, ch. 2 § 210.10(a). A party in a civil case must hire his or her own interpreter. A list of interpreters is available at https://www.mdd.uscourts.gov/service-providers.

[4] Because Defendant filed the motion on October 24, 2023, the requested date of October 21, 2023 appears to be a typographical error. The court presumes Defendant filed the second motion for extension of time to correct the first motion. The first motion will therefore be denied and the court will consider only the second motion.

however, also filed its opposition on October 24, 2023. (ECF No. 30).

Defendant then filed a notice of withdrawal of its motion for extension of time on October 25, 2023. (ECF No. 31). Plaintiff filed an opposition to Defendant's motion for extension of time on October 27, 2023. (ECF No. 32). Plaintiff filed a reply in support of her motion for default judgment on October 30, 2023, arguing that an exhibit Defendant filed in support of its opposition was fabricated. (ECF No. 33). Specifically, she asserted that her counsel noticed the exhibit containing an invoice had an eleven-digit phone number instead of a standard ten-digit phone number, found the correct phone number for the business, and spoke to an employee who informed her that he was unable to locate the invoice. (*Id.* at 8-9). She also represented that her counsel sent the invoice to the employee for his review and that he indicated the invoice was "definitely fake[,]" explaining that "someone took a newer invoice and took information that they liked and copied it and then added what they needed." (*Id.* at 9). Plaintiff stated that the employee confirmed this after realizing that the invoice reflects his sales name but predated his start date at the business. (*Id.*).

On November 7, 2023, Defendant filed a notice to withdraw the invoice filed in its opposition to Plaintiff's motion for default because "Defendant has independently verified that the invoice was

fraudulently issued." (ECF No. 34). Defendant asserts that "[t]he fraud in the issuance of the invoice was not with the knowledge or participation of Defendant." (*Id.*). Defendant blames the fraudulent invoice on the employee from whom Defendant bought a replacement motor for the vehicle it sold to Plaintiff:

> When Defendant purchased the replacement motor from Andy's Auto Parts, Defendant's agent dealt with employee William J. Alvarez. Alvarez prepared the invoice and sold Defendant the engine. At this time, there is a warrant for Alvarez' arrest. Alvarez is suspected of theft of more than $40,000 from Andy's Auto Parts. (On information and belief). Nonetheless, Defendant purchased and installed said engine.

(ECF No. 34, at 1) (internal citations omitted).

## II. Standard of Review

Pursuant to Fed.R.Civ.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment, upon the plaintiff's application and notice to the defaulting party, pursuant to Fed.R.Civ.P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Lipenga v. Kambalame*, 219

F.Supp.3d 517, 524-25 (D.Md. 2016); *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002).  The Fourth Circuit has a "'strong policy that cases be decided on their merits,'" *Kronberg v. LaRouche*, 461 F.App'x 222, 225 (4th Cir. 2012) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)), but default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party, *see Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F.Supp.3d 727, 740 (D.Md. 2023) (quoting *Grim v. Baltimore Police Dep't*, No. 18-cv-3864-ELH, 2019 WL 5865561, at *28 (D.Md. Nov. 8, 2019)).

"Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Trustees of Nat'l Elec. Benefit Fund v. Eckardt Elec. Co.*, No. 23-cv-1459-DKC, 2024 WL 473805, at *2 (D.Md. Feb. 7, 2024); *see also S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 422 (D.Md. 2005).  Conclusions of law are also not deemed admitted, and therefore "[t]he court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought[.]" *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

Before entering default judgment, "[t]he court first determines whether the unchallenged factual allegations constitute a legitimate cause of action, and, if liability is established, the court then makes an independent determination of damages."

*Trustees*, 2024 WL 473805, at *2 (citing Fed.R.Civ.P. 55(a)); *see also J&J Sports Prods., Inc. v. Torres*, No. 18-cv-1001-GJH, 2019 WL 1384090, at *2 (D.Md. Mar. 27, 2019) (citing *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D.Md. 2010)).

"While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on 'detailed affidavits or documentary evidence to determine the appropriate sum.'" *Id.* (quoting *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.Md. 2001)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, Civ. No. 09-cv-3174-WDQ, 2010 WL 1568595, at *3 (D.Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

## III. Analysis

### A. Motion for Extension of Time

Plaintiff filed her motion for default judgment on October 6, 2023.  (ECF No. 23).  Defendant's opposition was thus due on October 20, 2023, but it filed its motion for extension of time and its opposition on October 24, 2023.[5]  (ECF Nos. 28; 30). Because the motion to extend time was filed after the deadline passed, it will be reviewed pursuant to Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure.

---

[5] The court will address Defendant's motion to extend time even though Defendant attempted to withdraw the motion, (ECF No. 31), because its opposition was still filed untimely.

Rule 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  In interpreting the meaning of the term "excusable neglect," the United States Court of Appeals for the Fourth Circuit has "defined 'neglect' as encompassing 'late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control[,]'" and "defined 'excusable' as 'at bottom an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission.'"  *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996).  The relevant circumstances include:

> the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).  In contrast, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'"  *Id.* (quoting *Pioneer*, 507 U.S. at 392).

Defendant argues it missed the October 20, 2023 deadline because its "counsel has been on travel and has been preparing for

several cases that are in active litigation[]" and because "on October 22, 2023, [its c]ounsel had a brief hospitalization for illness." (ECF No. 28, at 1). In its opposition, however, Defendant asserts it missed the deadline because its counsel "understood that the Court's Order, Docket No. 25, meant to start the 14-day return date period at October 10, 2023 and not October 6, 2023." (ECF No. 30, at 1).

Plaintiff responds that Defendant's response time ran from the date it filed its motion for default judgment, October 6, 2023, not October 10, 2023, the date the Deputy Clerk entered a quality control notice. (ECF No. 32, at 3). Plaintiff also asserts that Defendant has not shown excusable neglect because Defendant's "conduct has severely prejudiced Plaintiff's pursuit of justice in this straightforward consumer case." (*Id.* at 4). Specifically, Plaintiff contends that Defendant "refused to participate in arbitration before JAMS and then it ignored the Complaint served on it in this case." (*Id.*). Plaintiff also points out that Defendant already moved to set aside the default but lost that argument. (*Id.*).

The equities point in both directions. First, an extension of time would prejudice Plaintiff, who has been attempting to resolve this matter since she initiated arbitration proceedings in January 2023, and who represents that she cannot afford to buy another car, which has hampered her ability to work and take care

of her children.  (ECF No. 24-2 ¶¶ 4-6, 29-33).  Second, the length of the delay is only four days and will not significantly affect judicial proceedings.  Third, Defendant's stated reasons for the delay are somewhat suspect.  Defendant's counsel submits that he was hospitalized for an illness on October 22, 2023, but the opposition was due October 20, 2023.  Moreover, Defendant changed its story as to its reason for the delay between its motion for extension of time and its opposition.  As for the reason provided in Defendant's opposition, the Deputy Clerk's quality control notice stated that Plaintiff's "document has been accepted as filed."  (ECF No. 25).  The court understands, however, that the date of entry may have caused confusion about when the time to file an opposition began to run.  Furthermore, Defendant submits that its counsel was traveling and preparing for multiple cases in active litigation.  Although this is not the first time Defendant has delayed in this case, there is no evidence of bad faith.

On balance, the court finds that Defendant has shown excusable neglect for its untimely filings.  Thus, Defendant's motion for extension of time will be granted.

**B. Motion for Default Judgment**

**1. Liability**

In determining whether entry of default judgment is proper, the court must first determine whether Plaintiff has alleged a

legitimate cause of action.   *Trustees*, 2024 WL 473805, at *2 (citing Fed.R.Civ.P. 55(a)).

   **a. Counts I and II: Federal Odometer Act**

   The Federal Odometer Act allows private parties to recover "3 times the actual damages or $10,000, whichever is greater[]" from those who violate its provisions "with intent to defraud[.]"  49 U.S.C. § 32710.  To state a claim under the Federal Odometer Act, a plaintiff must allege that (1) the defendant violated the Act or its regulations (2) with intent to defraud.  *Id.*  Plaintiff brings claims under §§ 32703(2) and 32705(a) of the Federal Odometer Act.

   Section 32703(2) provides that "[a] person may not . . . disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer."  49 U.S.C. § 32703(2).  Plaintiff alleges that Defendant altered the odometer on the vehicle to show that it had 100,000 fewer miles on it than it did.  (ECF No. 1 ¶¶ 48-50).

   Section 32705(a)(1) provides that "a person transferring ownership of a motor vehicle shall give the transferee" in writing either "[d]isclosure of the cumulative mileage registered on the odomotor[]" or "[d]isclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled."  49 U.S.C. § 32705(a)(1)(A)-(B).  Section 32705(a)(2) prohibits "a

false statement to the transferee in making the disclosure[.]" 49 U.S.C. § 32705(a)(2). Plaintiff alleges that Defendant falsely represented through the Retail Installment Sales Contract and through the odometer itself that the vehicle had mileage of 101,389 when in reality it had more than 201,263 miles. (ECF No. 1 ¶¶ 51-56).

Taking Plaintiff's factual allegations as true, she has sufficiently alleged that Defendant altered the odometer in violation of § 32703(2) and gave a false statement in disclosing the vehicle's mileage in violation of § 32705(a).

To be entitled to default judgment, Plaintiff must also plead facts sufficient to allege Defendant acted with intent to defraud. "A transferor need not have actual knowledge of an odometer discrepancy to have intent to defraud: it is enough if the transferor had constructive knowledge of or recklessly disregarded an inaccurate odometer reading and did not disclose it." *Alexander v. Se. Wholesale Corp.*, No. 2:13-cv-213-TEM, 2014 WL 1165844, at *4 (E.D.Va. Mar. 21, 2014) (citing *Oettinger v. Lakeview Motors, Inc.*, 675 F.Supp. 1488, 1493 (E.D.Va. 1988); *Tripp v. Charlie Falk Auto*, 2001 WL 1105132, at *4 (E.D.Va. 2001)); *see also Nelson v. Cowles Ford Inc.*, 77 F.App'x 637, 642 (4th Cir. 2003) ("[T]he phrase 'intent to defraud' requires a showing of at least gross negligence on the part of the transferor before liability can be imposed.").

A court may infer an "intent to defraud . . . from the fact that the odometer readings of the vehicles changed while the vehicles were under the dominion of the conspirators." *Att'y Gen. of Maryland v. Dickson*, 717 F.Supp. 1090, 1099 (D.Md. 1989). Here, Plaintiff alleges that the vehicle's CARFAX report shows the vehicle was sold at an auction on July 12, 2021 with a mileage of 201,263 miles. (ECF No. 1 ¶ 33). She alleges "[u]pon information and belief" that Defendant "purchased the Vehicle at the auction." (ECF No. 1 ¶ 35). She attaches the CARFAX report to her memorandum in support of her motion for entry of default judgment. (ECF No. 24-3, at 9). Defendant does not confirm or deny whether it was the purchaser at the auction, although Plaintiff alleges that Defendant acknowledged to her that it knew that the vehicle had more than 200,000 miles on it because it claims to have told her of the engine replacement when she questioned the odometer reading. (ECF No. 1 ¶ 40). Based on the facts alleged in the complaint, the court can infer that Defendant was the purchaser at the auction, and that the vehicle was thus under its dominion from the date the mileage was reported as 201,263 (July 12, 2021) until the date the odometer indicated a mileage of 101,389 (July 27, 2021).[6]

---

[6] Nothing Defendant has filed calls this inference into question. Defendant does not deny it was the purchaser at the auction. In fact, the fraudulent invoice attached to its opposition indicates that Defendant purchased a used engine for the vehicle on July 13, 2021, (ECF No. 30-4, at 1), and Mr. Arias states in his affidavit that he bought the engine on or about July

These facts lead the court to infer from the complaint that Defendant acted with an intent to defraud Plaintiff.

The court can also infer an intent to defraud when the transferor knew or should have known that the odometer reading might be inaccurate. *Alexander*, 2014 WL 1165844, at *5; *Oettinger*, 675 F.Supp. at 1493-94. The odometer reading of 201,263 miles at the time of the auction put Defendant on notice that the reading of 101,398 miles after installation of the engine might be inaccurate. Plaintiff alleges that Defendant admitted as much when she confronted it in October 2022. (ECF No. 1 ¶ 40).

Furthermore, courts have inferred an intent to defraud when the information was "peculiarly available to [the transferor] as a dealer, and not readily accessible to the buying public" and when "the odometer statement was made in part to induce the sale of the car." *Oettinger*, 675 F.Supp. at 1494. Here, Plaintiff alleges Defendant is a "dealer" within the meaning of the Federal Odometer Act. (ECF No. 1 ¶ 21). Defendant likely has specialized knowledge in accessing a CARFAX report or other documentation displaying the vehicle's past mileage and assessing whether the odometer reading was consistent with the vehicle's age and condition. The court also takes as true Plaintiff's allegation

---

13, 2021 and had his employee install it in the vehicle, (ECF No. 34-1, at 1). The fact that Defendant filed a notice to withdraw the invoice is immaterial because the affidavit provides the same date.

that Defendant made the representations regarding mileage to induce Plaintiff to purchase the vehicle. (ECF No. 1 ¶ 70). "A transferor may not close his eyes to the truth." *Oettinger*, 675 F.Supp. at 1943. Because Defendant knew or should have known that the odometer reading might be inaccurate, it owed a "duty of further inquiry to investigate the vehicle's true mileage and, if it could not find the true mileage, to disclose to Plaintiff that the vehicle's true mileage was unknown." *Alexander*, 2014 WL 1165844, at *5.

Defendant's assertion in its opposition that it disclosed to Plaintiff in writing that the vehicle's odometer did not contain the correct mileage and its exhibits purporting to show the same are unavailing. (ECF Nos. 30, at 4; 30-1, at 2; 30-2, at 7, 14). As noted above, factual allegations in the complaint not related to damages are deemed admitted. *See, e.g.*, *Nat'l Elec. Benefit Fund v. Powersource Telecom, Inc.*, No. 17-cv-574-TDC, 2018 WL 703257, at *2 (D.Md. Feb. 5, 2018) (citing Fed.R.Civ.P. 8(b)(6); *Ryan*, 253 F.3d at 780). Thus, the court will take as true Plaintiff's well-pleaded allegation that she "received no other written representations regarding the Vehicle's odometer reading or mileage[]" apart from the representations in the Retail Installment Sales Contract and on the odometer itself that the mileage was 101,389 miles. (ECF No. 1 ¶¶ 24-26, 28).

Taking as true the factual allegations in the complaint, Plaintiff has sufficiently alleged that Defendant violated §§ 32703(2) and 32705(a) of the Federal Odometer Act with an intent to defraud. Hence, Plaintiff's motion for entry of default judgment will be granted as to the request for entry of default judgment.

### b. Counts III and IV: Maryland Consumer Protection Act and Common Law Intentional Misrepresentation/Fraudulent Inducement

As will be explained in more detail below concerning the available damages, because the factual allegations in Plaintiff's Federal Odometer Act claims constitute legitimate causes of action, the court need not address whether the remaining counts sufficiently state a claim.

### 2. Appropriateness of Default Judgment

The next question is whether default judgment is proper. In making this determination, courts often consider "(1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct." *United States v. Belzner*, No. 13-cv-2414-WDQ, 2014 WL 1344187, at *1 (D.Md. Apr. 3, 2014), *report and recommendation adopted*, No. 13-cv-2414-WDQ, 2014 WL 2153938 (D.Md. Apr. 23, 2014) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987); *Smith v. Bounds*, 813 F.2d 1299, 1303 (4th Cir. 1987) (relying on these

factors in determining whether a default judgment merited reconsideration)).

After holding an evidentiary hearing to determine whether Defendant was served, the court found that Defendant had been properly served and failed to file an answer in a timely fashion and that there no reason to vacate entry of default. (ECF No. 22). Defendant has notice now and can participate in the hearing to determine Plaintiff's entitlement to damages. Further delay would be prejudicial to Plaintiff and Defendant has not proffered a meritorious defense to the odometer roll back, even if it in some fashion told Plaintiff about replacing the engine. Therefore, granting a default judgment is proper.

**3. Damages**

Although the facts pleaded in the complaint are taken as true, Plaintiff must prove her damages. Plaintiff seeks three times her actual damages plus punitive damages, attorneys' fees, and costs. (ECF Nos. 1, at 9; 24-1, at 11). She asserts she suffered actual damages in the amount of $42,055.45, which includes $11,655.45 in payments made to Defendant for the vehicle, approximately $10,400 in Uber and other travel expenses incurred as a result of the fraud and statutory violations, and $20,000 for the stress, frustration, and distress caused by the violations. (ECF No. 24-1, at 19). She argues she is entitled to an award of treble damages in the amount of $126,166.35 under the Federal Odometer Act. (*Id.*). She

18

seeks punitive damages in the amount of $22,055.45 for her fraud claim. (*Id.*). She submits that she will fully brief her entitlement to attorneys' fees and costs within 14 days of entry of a judgment. (*Id.*).

The Federal Odometer Act provides for recovery of three times the actual damages or $10,000, whichever is greater, as well as attorneys' fees and costs. 49 U.S.C. § 32710(a)-(b). Actual damages are "the difference in price between what the plaintiff actually paid for the vehicle and the actual fair market value of the vehicle based on its accurate mileage, 'plus any expenses shown to be attributable to the wrongful acts of the defendant.'" *Alexander*, 2014 WL 1165844, at *7 (quoting *Oettinger*, 675 F.Supp. at 1496).

The MCPA provides for recovery of damages and reasonable attorneys' fees. Md. Code Ann., Com. Law § 13-408(b). Damages include any "injury or loss sustained by [the plaintiff] as the result of" the MCPA violation. Md. Code, Com. Law § 13-408(a).

Finally, a plaintiff may recover actual damages and punitive damages under the Maryland common law for intentional misrepresentation and fraudulent inducement. Judge Bennett outlined the requirements for proving punitive damages in an intentional misrepresentation claim in *Klicos Painting Co., Inc. v. Saffo Contractors, Inc.*, No. 15-cv-2505-RDB, 2018 WL 3432043 (D.Md. July 16, 2018):

> Under Maryland law, an award of punitive
> damages is appropriate if the defendant acted
> with "actual malice," which is "conscious and
> deliberate wrongdoing, evil or wrongful
> motive, intent to injure, ill will, or fraud."
> *Bowden v. Caldor, Inc.*, 350 Md. 4, 23, 710
> A.2d 267, 276 (1998) (internal quotation marks
> omitted).   In the case of a claim for
> intentional misrepresentation, "the
> defendant's actual knowledge of falsity,
> coupled with his intent to deceive the
> plaintiff by means of the false statement,
> constitutes the actual malice required to
> support an award of punitive damages."
> *Ellerin v. Fairfax Sav.*, F.S.B., 337 Md. 216,
> 234, 652 A.2d 1117, 1126 (1995); *see* MPJI-Cv
> 10:15.   Again, this state of mind must be
> proven by clear and convincing evidence.
> *Scott v. Jenkins*, 345 Md. 21, 29, 690 A.2d
> 1000 (1997).

*Klicos*, 2018 WL 3432043, at *14.

Plaintiff is entitled to recover under the Federal Odometer Act.  She is not, however, "entitled to any additional award for [her MCPA] or fraud causes of action because they arise from the same facts, duties, and injury as does [her] Odometer Act claim." *Alexander*, 2014 WL 1165844, at *8.  Recovery under more than one cause of action would provide "double recovery."  *Id.*  Although punitive damages are available under common law fraud but not her statutory causes of action, "an 'award of treble damages . . . is sufficient to further the purposes of a punitive damages award.'" *Id.* at *9 (quoting *Reynolds v. Reliable Transmissions, Inc.*, 3:09-cv-238-DWD, 2010 WL 2640065, at *6 (E.D.Va. June 29, 2010)).

A hearing will be required for Plaintiff to prove her entitlement to damages because the record does not support the damages requested. *Laborers' Dist. Council Pension*, 2010 WL 1568595, at *3. Plaintiff does not subtract the fair market value of the vehicle in arriving at her actual damages figure. The parties should thus be prepared to present evidence on the vehicle's fair market value as well as whether and how the fact that Plaintiff possessed the vehicle for just under 15 months should affect her actual damages.

Plaintiff also has not proven her entitlement to $10,400 in Uber and other travel expenses attributable to the wrongful acts of Defendant. *Alexander*, 2014 WL 1165844, at *7 (quoting *Oettinger*, 675 F.Supp. at 1496). She attaches no receipts or other evidence of these expenses except the statements in her affidavit that she pays her friend about $30 a day to borrow the friend's vehicle and to fill up the gas tank, and pays approximately $200 per week in Uber fares. (ECF No. 24-2 ¶¶ 31, 32). Defendant does not challenge the statements in Plaintiff's affidavit as to the $10,400 in expenses she attributes to Defendant's wrongful conduct. Courts have entered default judgment without holding a hearing when the plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits." *DIRECTV, Inc. v. Yancey*, No. 04-cv-00011-U, 2005 WL 3435030, at *2 (W.D.Va. Dec. 12, 2005); *see also*

*Garner v. Country Care, LLC*, No. 13-cv-2662-PWG, 2014 WL 4799027, at *3 (D.Md. Sept. 25, 2014); *Lopez v. XTEL Const. Grp., LLC*, No. 08-cv-1579-PWG, 2011 WL 6330053, at *4 (D.Md. Dec. 16, 2011). Courts have, however, emphasized that the plaintiff should provide the defendant with "notice of the damages through the documents supporting Plaintiff's motion[.]" *Monge v. Portofino Ristorante*, 751 F.Supp.2d 789, 797 (D.Md. 2010).

Here, Plaintiff filed no supporting documents other than her affidavit that prove she incurred $10,400 in expenses attributable Defendant's wrongful conduct.   To recover these expenses, Plaintiff will need to prove at the hearing that she incurred them and that they are attributable to Defendant's wrongful conduct.

Plaintiff will also need to prove her entitlement to emotional distress damages.   Although she includes her request for $20,000 "for the stress, frustration, and distress caused by [Defendant's] fraud and statutory violations[]" in her calculation of treble damages, (ECF No. 24-1  ¶¶ 125-26), she does not argue that emotional distress damages are recoverable as "'expenses shown to be attributable to the wrongful acts of the defendant[]'" under the Federal Odometer Act.   *Alexander*, 2014 WL 1165844, at *7 (quoting *Oettinger*, 675 F.Supp. at 1496).   Thus Plaintiff must prove both that she incurred these damages and that they are recoverable under the Federal Odometer Act.   If she relies solely on her intentional misrepresentation/fraudulent inducement theory

to recover emotional distress damages, she will need to prove "either an accompanying or consequential 'physical' injury[.]" *Hoffman v. Stamper*, 385 Md. 1, 37-38 (2005) (referring to, but not citing, *Vance v. Vance*, 286 Md. 490 (1979)).

Because Plaintiff has not proven her entitlement to damages, her motion for entry of default judgment will be denied as to her request for damages.

## IV. Conclusion

For the foregoing reasons, Defendant's first motion for extension of time will be denied, Defendant's second motion for extension of time will be granted, Plaintiff's motion for entry of default judgment will be granted in part and denied in part, and a hearing will be scheduled to determine Plaintiff's entitlement to damages. A separate order will follow.

                                    /s/
                                    _____
                                    DEBORAH K. CHASANOW
                                    United States District Judge