```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

NOLVIA IRIS RIVERA RIOS          :

                              :

   v.                          : Civil Action No. DKC 23-1140

                              :

WINNERS AUTO SALE, LLC d/b/a
Winners Auto Sales               :

**MEMORANDUM OPINION**

Plaintiff Nolvia Iris Rivera Rios ("Plaintiff") brought this action against Winners Auto Sale, LLC ("Defendant"), alleging that the odometer on a minivan she purchased had been rolled back. A default has been entered against Defendant, (ECF No. 5), and Plaintiff filed a motion for default judgment, (ECF No. 23). A hearing was held on June 20, 2024.

Based on Defendant's default, the following facts alleged in the complaint are taken as true. Plaintiff purchased a 2012 Honda Odyssey from Defendant on July 27, 2021. (ECF No. 1 ¶ 22). Defendant represented that the mileage was 101,389[1] both in writing on the Retail Installment Sales Contract and as shown on the odometer itself. (*Id.* ¶¶ 24-26). Plaintiff received no other written representations regarding the vehicle's odometer reading

---

[1] Plaintiff refers to mileage of 101,389, (ECF No. 1 ¶¶ 3, 36, 52, 58, 66), and 101,839, (*id.* ¶¶ 24, 26). The discrepancy is due to typographical error. The 101,389 mileage appears on the installment contract.

or mileage.  (*Id.* ¶ 28).  In August 2022, a mechanic found significant issues with the transmission and engine, and quoted Plaintiff several thousand dollars in repairs.  (*Id.* ¶¶ 29-31).  Plaintiff reviewed a CARFAX report after consulting with the mechanic which showed that the vehicle was sold at an auction on July 21, 2021, with mileage at 201,263.[2]  (*Id.* ¶¶ 32, 33).  Plaintiff alleges on information and belief that Defendant was the purchaser at the auction.  (*Id.* ¶ 35).  Defendant had the vehicle inspected on July 26, 2021, showing mileage at 101,389.  (*Id.* ¶ 36).  The CARFAX report notes the discrepancy as "POTENTIAL ODOMETER ROLLBACK."  (*Id.* ¶ 37).  Plaintiff confronted Defendant with that revelation on October 24, 2022, and Defendant acknowledged the excess miles but indicated that it had told her at the time that the vehicle had over 200,000 miles, which was untrue.  (*Id.* ¶¶ 39, 40).

As noted in an earlier opinion, those facts suffice for Plaintiff's claims under the Federal Odometer Act, 49 U.S.C. § 32703(2) and 32705(a), with intent to defraud.  The court also found that Plaintiff had not sufficiently supported the damages requested and, accordingly, a hearing on damages was held.

---

[2] Plaintiff refers to mileage of 201,263, (ECF No. 1 ¶¶ 7, 52, 58, 66, 69), and 201,623, (*id.* ¶ 33).  The court again assumes the discrepancy is due to typological error and will use the 201,263 figure.

2

The Federal Odometer Act provides for recovery of three times the actual damages or $10,000, whichever is greater, as well as attorneys' fees and costs.  49 U.S.C. § 32710(a)-(b).  Actual damages ordinarily are "the difference in price between what the plaintiff actually paid for the vehicle and the actual fair market value of the vehicle based on its accurate mileage, 'plus any expenses shown to be attributable to the wrongful acts of the defendant.'"  *Alexander v. Se. Wholesale Corp.*, No. 2:13-cv-213-RBS, 2014 WL 1165844, at *7 (E.D.Va. Mar. 21, 2014) (quoting *Oettinger v. Lakeview Motors, Inc.*, 675 F.Supp. 1488, 1496 (E.D.Va. 1988)).

In her initial motion, Plaintiff sought the following:

> Plaintiff has suffered actual damages in the amount of $42,055.45, which includes:  (i) $11,655.45 in payments made to Winners for the Vehicle, which Plaintiff no longer owns and for which Plaintiff never received compensation following Winners' repossession; (ii) approximately $10,400 in Uber and other travel expenses incurred as a result of the fraud and statutory violations; and (iii) $20,000.00 for the stress, frustration, and distress caused by Winners' fraud and statutory violations.

(ECF No. 24-1 ¶ 125).

The record contains the installment sales contract showing a purchase price of $17,500 and receipts evidencing the payments of principal made by Plaintiff, totaling $11,500.  (ECF Nos. 14-1, at 13-21; 30-3, at 1-2).  Plaintiff ceased making payments after

August 2022 and the vehicle was repossessed by Defendant in October 2022.[3] It was sold to someone else at a price high enough to satisfy the remainder due on Plaintiff's contract so there is no deficiency for the $6,000 still owed on the vehicle. Plaintiff testified at the hearing that she would not have purchased the vehicle had she known the true mileage and that she stopped making payments altogether when she learned of the rollback. While not entirely clear based on her testimony, she had the use of and actually did use the car up to the day of the repossession.[4] After she no longer had the car, she relied on a borrowed car from a friend and Ubers to get to the homes she cleaned. She also called her friend who testified that she loaned her car to Plaintiff on 200 occasions and charged $30 in cash each time. Plaintiff makes no claim for lost income.

Plaintiff has not proven that the repossession of the vehicle was a result of the odometer rollback, and thus there is no basis to reimburse her for any expenses after repossession of the car. She said that she stopped paying when she learned of the odometer

---

[3] The vehicle inspection report shows an odometer reading of 122,703, meaning that Plaintiff drove the vehicle approximately 21,313 miles, between the purchase in July 2021 and repossession in October 2022. (ECF No. 24-3, at 10).

[4] This conclusion does not depend on Defendant's proffered exhibit, the GPS records. Thus, it is not necessary to allow Defendant additional time to obtain authentication and the motion to extend time, ECF No. 47, is DENIED.

4

rollback, but the law does not automatically permit her to do that. She was regularly late in making payments even before then, often missing a month and making a double payment the following month. Accordingly, the court finds that Plaintiff voluntarily ceased making any payments and thus lost the use of the vehicle. Any damages (emotional distress or otherwise), or expenses, after October 2022 were the result of her default on the payments and not the odometer rollback. She has not provided adequate evidentiary support for the Uber trips, in any event.[5] Nor has she established, reliably, emotional distress damages connected to the odometer rollback.

As for the economic impact on the value due to the rollback, she resorts to a speculative and somewhat strained analysis, based on what she alleges is the Kelley Blue Book value of the car with more than 200,000 miles and an IRS publication of the lease value of a work vehicle for personal use. She then seeks the difference between those numbers as actual damages, which she wants tripled.

In the typical case, the damage calculation should be based on the amount paid reduced by the actual market value of the

---

[5] Plaintiff contends that the evidentiary standards should be relaxed when determining damages after default because of the lack of an opportunity for discovery from the defaulting party. The documents most at issue from her perspective are her own bank statements and nothing prevented her from obtaining necessary authentication. Even if those documents were admissible, her testimony was insufficiently specific.

vehicle at the time of the sale.  *Perez v. Z Frank Oldsmobile, Inc.,* 223 F.3d 617, 620 (7th Cir. 2000); *Alexander*, 2014 WL 1165844, at *7 (quoting *Oettinger*, 675 F.Supp. at 1496).  Other so-called consequential damages, such as repair costs, finance charges, and for loss of use of the vehicle, are not separately allowed.  The assumption is that those considerations are reflected in the lower market value of the vehicle.  *Perez*, 223 F.3d at 620.

Here, Plaintiff did not pay the full price of the car and no longer has the car.  Thus, the typical calculation of actual damages in the form of lowered fair market value is not available.  She has not, however, presented a viable alternative for calculation of her pecuniary loss during the time she had the vehicle and was making payments.

Congress has recognized that many types of statutory violations result in injury that is hard to state in monetary terms.  In those situations, the statues authorize the award of statutory damages even when no actual damages are proven.

> This court has recognized that even though statutory damages may be used in cases where no actual damages were incurred, they are also often employed where damages are "difficult or impossible to calculate."  *Cable/Home Commc'n Corp. v. Network Prod., Inc.,* 902 F.2d 829, 850 (11th Cir. 1990).

*Harris v. Mexican Specialty Foods, Inc.,* 564 F.3d 1301, 1310 (11th Cir. 2009).

The Federal Odometer Act provides for recovery of three times the actual damages or $10,000, whichever is greater, as well as attorneys' fees and costs.  49 U.S.C. § 32710(a)-(b).  Without any evidence of actual damages, Plaintiff is entitled to $10,000.  A judgment for that amount will be entered.  Any petition for attorneys' fees should be filed in accord with local rules.

A separate order will be entered.

                                  _____/s/_____
                                  DEBORAH K. CHASANOW
                                  United States District Judge